SO ORDERED.
SIGNED 24th day of June, 2025

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

Nancy B. King
U.S. Bankruptcy Judge



**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| IN RE: ) | |
| RICHARD NICHOLAS BAIN ) | Case No. 3:23-bk-03205 |
| DEANA LEEANN BAIN ) | Chapter 13 |
| ) | |
| Debtors. ) | Judge Nancy B. King |
| ) | (By Interchange) |
| ) | |

# MEMORANDUM OPINION

This matter is before the Court on the Debtors' motion to approve a post-confirmation modification under 11 U.S.C. § 1329(a) to surrender their 2015 Ford Escape and pay the secured creditor's claim in the amount agreed upon at confirmation but without paying any further post-surrender interest. The creditor, Exeter Finance, LLC ("Exeter"), opposes the motion, arguing that *Chrysler Fin. Corp. v. Nolan* (*In re Nolan*), 232 F.3d 528 (6th Cir. 2000) and *Ruskin v. DaimlerChrysler Servs. N. Am.* (*In re Adkins*), 425 F.3d 296 (6th Cir. 2005): (1) preclude such a modification and (2) that interest should be paid on the secured claim. The Chapter 13 Trustee ("Trustee") and the Debtors contend *Nolan* and *Adkins* are distinguishable, and the modification is permissible.

For the following reasons, which represent the Court's findings of fact and conclusions of law, pursuant to Federal Rule of Bankruptcy Procedure 7052, made applicable by Federal Rule of Bankruptcy Procedure 9014(c), the Court finds this case is distinguishable from *Nolan* and *Adkins* and that the Debtors' "Motion to Modify Chapter 13 Plan to Surrender Collateral and Grant Relief" should be granted.

## I. BACKGROUND

The Debtors filed this Chapter 13 case on August 31, 2023. The plan was confirmed on October 24, 2023, and provided for monthly payments to Exeter, the secured creditor holding a lien on a 2015 Ford Escape, in the amount of $13,730.64. The plan treated Exeter as fully secured and proposed to pay its claim at 10.50% interest over the plan term.[1]

Due to mechanical issues with the vehicle and financial hardship, the Debtors now seek to surrender the vehicle and modify the plan under 11 U.S.C. § 1329 to remove the collateral and pay the remaining balance of the secured claim but without interest. Exeter does not oppose the surrender and sale of the vehicle but asserts it is entitled to the continued payment of 10.50% interest. Thus, the Debtors propose to pay the remainder of Exeter's claim ($9,924.10) not as an unsecured claim as was proposed by the debtor in *Nolan*, but as a fully satisfied secured claim with no post-surrender interest.[2]

---

[1] In the confirmed plan, the Debtors did not propose to bifurcate Exeter's claim because the vehicle was purchased within 910 days of the petition date. The Code provides "certain exceptions to a Chapter 13 debtor's power to bifurcate an undersecured claim in a cramdown." *In re Scarver,* 555 B.R. 822, 826 (Bankr. M.D. Ala. 2016). One such exception is the "hanging paragraph" of 11 U.S.C. § 1325(a). As part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Congress inserted this new paragraph below 11 U.S.C. § 1325(a)(9) and above 11 U.S.C. § 1325(b). Although the hanging paragraph requires full payment of a secured claim when the debtor elects to retain a vehicle purchased within 910 days of the petition, it does not explicitly address what happens when a debtor elects to surrender the collateral.

[2] The dividend to unsecured creditors in this case is 1% pursuant to an Agreed Order, entered on November 12, 2024, resolving the Trustee's objection to the Debtors' previous motion to modify plan.

Exeter objects for two reasons: (1) under *Nolan* and *Adkins*, it is entitled to "remain a secured creditor until such time as the secured claim is paid in full;"[3] and (2) the confirmed Chapter 13 Plan's nonstandard provisions included specifically as to Exeter's treatment prevent the Debtors' modification. The Trustee supports the Debtors' modifications, advocating that *Nolan* and *Adkins* were pre-BAPCPA decisions that would be decided differently today and that allowing interest to a fully paid secured creditor after surrender is a windfall to Exeter at the expense of all other creditors.

## II. DISCUSSION

In *Nolan*, the Sixth Circuit held that a Chapter 13 "debtor cannot modify a plan under section 1329(a) by: (1) surrendering the collateral to a creditor; (2) having the creditor sell the collateral and apply the proceeds toward the claim, and (3) having any deficiency *classified as an unsecured claim*." 232 F.3d 528, 535 (citation omitted) (emphasis added). The Court believed debtors should not have "wide latitude to subject the creditor to their whims throughout the life of the plan" nor the ability to "reap a windfall by employing a subterfuge" by unfairly shifting the costs of depreciation to the creditor voluntarily assumed by the debtor through confirmation of a Chapter 13 plan. *Id.* at 534. In other words, the primary concerns in *Nolan* were two-fold: (1) permitting reclassification to account for an unsecured deficiency claim would allow debtors to unfairly shift the burden of depreciation to creditors after confirmation of the plan, and (2) the finality of the confirmation order would be undermined.

---

[3] Response by Exeter to Debtor's Motion to Modify Chapter 13 Plan and to Surrender Collateral and Grant Relief, Docket No. 66, at 2, ¶ 7 (May 23, 2025).

The Sixth Circuit's discussion in *Nolan* centers on debtors manipulating the system by using the collateral post-confirmation until all the value has been wrung out of it, then surrendering the collateral and modifying the plan to reduce the payment to the secured creditor. *Adkins*, decided shortly before BAPCPA, doubled down on the holding in *Nolan*. The Sixth Circuit re-iterated *Nolan*'s rationale,[4] and then extended the holding to include not just voluntary surrender, but also the more prevalent circumstance of debtors seeking to modify the treatment of a secured creditor who has obtained relief from the automatic stay and foreclosed its interest in the collateral post-confirmation.

The majority of courts outside the Sixth Circuit have found *Nolan* and *Adkins* unduly restrictive,[5] or as one Court wrote, "'simply wrong.'" *In re Cooke*, 655 B.R. 181, 193 (Bankr. N.D.

---

[4] In *Adkins*, the Sixth Circuit reviewed the five principles on which *Nolan* was based: (1) Section 1329(a) does not expressly allow a debtor to alter, reduce, or reclassify a previously allowed claim but rather only affords the debtor a right to request an alteration of the amount or timing of specific payments; (2) a post-confirmation surrender and subsequent reclassification is an attempt to bifurcate a claim that has already been classified as fully secured; (3) allowing a modification to reclassify would shift the burden of depreciation to a secured creditor; (4) debtors could take advantage of depreciation while secured creditors could not take advantage of appreciation; and (5) reclassifying claims post-confirmation is at odds with the plain language of Section 1329. 425 F.3d 296, 299-301.

[5] *See, e.g.*, *In re Jenkins*, 639 B.R. 356, 361 (Bankr. E.D. Tex. 2022) ("Court respectfully agrees with the weight of authority in favor of allowing a § 1329 modification to surrender collateral, so long as such modification is filed in good faith."); *In re Anderson*, 545 B.R. 174, 179-80 (Bankr. N.D. Miss. 2015) (rejecting *Nolan* and allowing debtors to modify confirmed plan to surrender vehicle and reclassify deficiency as unsecured); *In re Jones*, 538 B.R. 844, 852 (Bankr. W.D. Okla. 2015) ("Court concludes there is no *per se* prohibition on the suggested plan modification. This Court thus respectfully disagrees with the conclusion announced in *Nolan* and its progeny."); *In re Tucker*, 500 B.R. 457, 461 (Bankr. N.D. Miss. 2013) (rejecting *Nolan*'s narrow reading of § 1329(a)); *In re Brown*, 463 B.R. 134, 137-38 (Bankr. S.D. Ind. 2011) (following contrary line of cases*)*; *In re Hutchison*, 449 B.R. 403, 407 (Bankr. W.D. Mo. 2011) (rejecting *Nolan* and following cases which permit modification); *In re Williams*, No. A09-00745-DMD, 2011 WL 5025230, at *3 (Bankr. D. Alaska Jan. 31, 2011) (rejecting *Nolan*); *In re Odlin*, No. 07-62298-fra13, 2010 WL 3791486, at *2 (Bankr. D. Or. Sept. 22, 2010) (If debtor acts in good faith, post-confirmation modification to surrender collateral is allowed.); *In re Boykin*, 428 B.R. 662, 666 (Bankr. D.S.C. 2009) (rejecting *Nolan*); *In re Sellers*, 409 B.R. 820, 826 (Bankr. W.D. La. 2009) ("*Nolan*'s narrow reading of section 1329(a) is not supported by the Code."); *In re Davis*, 404 B.R. 183, 194 (Bankr. S.D. Tex. 2009) (disagreeing with *Nolan* reasoning); *In re Disney*, 386 B.R. 292, 301 (Bankr. D. Colo. 2008) ("Court finds the better reasoned view recognizes the interplay of §§ 502(j) and 1329(a) to allow for recharacterization of a secured claim following foreclosure or surrender of collateral and treatment of the resulting deficiency claim in a modified plan."); *In re Amador*, No. 05-44401-BKC-AJC, 2008 WL 1336962, at *2 (Bankr. S.D. Fla. Apr. 9, 2008) (rejecting *Nolan*); *In re Lane*, 374 B.R. 830, 838 (Bankr. D. Kan. 2007) ("Court declines to follow *Nolan* and *Adkins* and adopts the reasoning of those courts allowing modification of confirmed Chapter 13 plans where collateral, which the plan provided would be retained by the debtor, is liquidated during the term of the plan."); *In re Mellors*, 372 B.R. 763, 773 (Bankr. W.D. Pa. 2007) (disagreeing with *Nolan* Court's interpretation of § 1329(a)); *In re Marino*, 349 B.R. 922, 923 (Bankr. S.D. Fla. 2006) ("A Chapter 13 debtor's right to modify

Ill. 2023) (*quoting In re Scarver*, 555 B.R. 822, 834).[6] The Court in *Scarver* wrote:

> A striking characteristic of the Sixth Circuit's opinion in *Nolan* is that it spent considerable effort explaining why *Jock* and its progeny are wrong, without explaining why its own interpretation is correct. To reach the result that it did, however, the Sixth Circuit erected several artificial restrictions on post-confirmation plan modification that are not grounded in the plain language of the relevant statutes. The illogical result of these restrictions is amply illustrated by *Adkins*, which rested almost entirely on *Nolan*'s faulty reasoning.

---

under § 1329 includes the right to surrender collateral to a creditor previously treated as secured under a confirmed plan."); *Bank One, NA v. Leuellen* (*In re Leuellen*), 322 B.R. 648, 656 (S.D. Ind. 2005) (fundamentally disagreeing with *Nolan*'s interpretation of the Bankruptcy Code and finding modifications should always adhere to the Court's scrutiny for good faith, mitigating abuse, not artificial limits on right to modify under 11 U.S.C. § 1329); *In re Jefferson*, 345 B.R. 577, 583 (Bankr. N.D. Miss. 2006) ("Strictly prohibiting a modification under these factual circumstances could not have been the intent of Congress, because then both § 502(j) and § 1329 would be rendered meaningless."); *In re Ward*, 348 B.R. 545, 549 (Bankr. D. Idaho 2005) (disagreeing with *Nolan*); *In re Mason*, 315 B.R. 759, 766 (Bankr. N.D. Cal. 2004) (same); *In re Taylor*, 297 B.R. 487, 491 (Bankr. E.D. Tex. 2003) (court allowed modification to surrender under § 1329(a)(3) for limited purpose of taking into account payment received from another source where debtor had voluntarily surrendered vehicle and secured lender had sold the collateral); *In re Arencibia*, No. 01-40647-BKC-RAM, 2003 WL 21004969, at *2 (Bankr. S.D. Fla. Apr. 1, 2003) (rejecting *Nolan*); *In re Hernandez*, 282 B.R. 200, 204 (Bankr. S.D. Tex. 2002) ("A conclusion that a rigid rule of law is necessary to avoid potential abuse ignores the safeguards already in [§ 1329]"); *In re Knappen*, 281 B.R. 714, 717 (Bankr. D.N.M. 2002) (rejecting *Nolan*); *In re Zieder*, 263 B.R. 114, 117-19 (Bankr. D. Ariz. 2001) (disagreeing with *Nolan*'s interpretation); *In re Townley*, 256 B.R. 697, 699 (Bankr. D.N.J. 2000) (§ 1329 permits post-confirmation modification of secured claims); *Day v. Sys. & Servs. Tech., Inc.* (*In re Day*), 247 B.R. 898, 903 (Bankr. M.D. Ga. 2000) (same); *In re Conley*, No. 97-16705-SSM, 2000 WL 1805324, at *4 (Bankr. E.D. VA. Sept. 28, 2000) ("[B]etter reasoned view . . . is to permit a post-confirmation plan modification that provides for the voluntary surrender of collateral, and for the payment of any deficiency as an unsecured claim."); *Davis-McGraw, Inc. v. Johnson* (*In re Johnson*), 247 B.R. 904, 908 (Bankr. S.D. Ga. 1999) ("A claim simply cannot be secured when nothing secures it."); *In re White*, 169 B.R. 526, 531 (Bankr. W.D.N.Y. 1994) (where relief from stay granted post-confirmation and collateral sold, any deficiencies rendered unsecured).

[6] There is a minority of courts that are in accord with *Nolan* and *Adkins* outside the Sixth Circuit. *See, e.g.*, *In re Ramos*, 540 B.R. 580, 593-94 (Bankr. N.D. Tex. 2015) (debtor cannot modify plan to surrender collateral in full satisfaction of claim); *In re Belcher*, 369 B.R. 465, 469 (Bankr. E.D. Ark. 2007) (Under BAPCPA, "[t]he same reasons still exist for not permitting a debtor to change the option to surrender or not surrender after confirmation of the original plan."); *In re Arguin*, 345 B.R. 876, 882 (Bankr. N.D. Ill. 2006) (agreeing with *Nolan*); *In re Wilcox*, 295 B.R. 155, 157 (Bankr. W.D. Okla. 2003) (adopting *Nolan* reasoning, noting that logic "does not trump the letter of the law"); *In re Cameron*, 274 B.R. 457, 460 (Bankr. N.D. Tex. 2002) (reaching same conclusion as *Nolan*); *In re Coffman*, 271 B.R. 492, 496 (Bankr. N.D. Tex. 2002) (applying *Nolan*); *In re Jackson*, 280 B.R. 703, 705 (Bankr. S.D. Ala. 2001) (adopting *Nolan* reasoning); *In re Barclay*, 276 B.R. 276, 282 (Bankr. N.D. Ala. 2001) (same); *In re Adams*, 270 B.R. 263, 270 (Bankr. N.D. Ill. 2001) (recognized *Nolan* but allowed debtors to strip down post-confirmation claim pursuant to § 502(j)); *In re Smith*, 259 B.R. 323, 329 (Bankr. S.D. Ill. 2001) (agreeing with *Nolan*); *In re Coleman*, 231 B.R. 397, 400 (Bankr. S.D. Ga.1999) (§ 1329(a)(1) does not permit reclassification of claims); *In re Meeks*, 237 B.R. 856, 860 (Bankr. M.D. Fla. 1999) (same); *In re Dunlap*, 215 B.R. 867, 870 (Bankr. E.D. Ark. 1997) (same); *In re Banks*, 161 B.R. 375, 379 (Bankr. S.D. Miss. 1993) (same); *In re Holt*, 136 B.R. 260, 260-61 (Bankr. D. Idaho 1992) (modification to return vehicle to secured creditor not allowed under § 1329).

*Id.* at 833-34.[7]

There are two main criticisms of *Nolan* and *Adkins:* (1) the Sixth Circuit's interpretation of 11 U.S.C. § 1329 is unnecessarily narrow and/or restrictive, and (2) *Nolan* and *Adkins* do not leave room for reconsideration of a claim under 11 U.S.C. § 502(j).[8] *See Scarver*, 555 B.R. at 834 (giving detailed analysis of both tracts of criticism of *Nolan* and *Adkins*). Most courts disagreeing with *Nolan* and *Adkins* now cite both lines of reasoning and point out that when 11 U.S.C. § 1329(a) "is read in context with claim reconsideration under § 502(j), it is apparent that § 1329(a) permits modifications to be made to a plan that reflect the reality of changed circumstances." *In re Disney*, 386 B.R. 292, 304.

---

[7] The Court in *Scarver* is referring to Judge Lundin's opinion in *In re Jock*, 95 B.R. 75 (Bankr. M.D. Tenn. 1989). The *Jock* case held that a Chapter 13 debtor can modify a confirmed plan to surrender a car to a secured claim holder and pay any deficiency as an unsecured claim. But for *Nolan* and *Adkins*, *Jock* and other opinions within the Sixth Circuit would be in line with the majority of courts to consider this issue. *See, e.g.*, *In re Waller*, 224 B.R. 876, 879 (Bankr. W.D. Tenn.1998) (debtor could modify confirmed plan to reclassify a deficiency as unsecured claim); *In re Anderson*, 153 B.R. 527, 528 (Bankr. M.D. Tenn. 1993) (debtors not required to continue making payments on secured claim when bank actively repossessed collateral); *In re Rimmer*, 143 B.R. 871, 876 (Bankr. W.D. Tenn.1992) ("[A] debtor possibly *may* modify a confirmed plan by surrender of collateral, by reduction of the secured claim in the amount of the liquidation of the collateral, and by increase of the unsecured claim in the amount of the remaining deficiency."); *In re Frost*, 96 B.R. 804, 808 (Bankr. S.D. Ohio 1989) (modification to surrender real property allowed); *In re Stone*, 91 B.R. 423, 425 (Bankr. N.D. Ohio 1988) ("[D]ebtor is expressly authorized under Section 1329(a)(3) to reclassify a secured claim as unsecured when the creditor has liquidated its collateral but still claims a deficiency to be due from the debtor.").

[8] 11 U.S.C. § 502(j) provides:

> A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case. Reconsideration of a claim under this subsection does not affect the validity of any payment or transfer from the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered claim is allowed and is of the same class as such holder's claim, such holder may not receive any additional payment or transfer from the estate on account of such holder's allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by such other holder. This subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor.

Although much of the Sixth Circuit's rationale in *Nolan* and *Adkins* was based on pre-BAPCPA bankruptcy law, those cases are still controlling in the Sixth Circuit. This Court is bound by those decisions unless, like here, there is a legitimate distinguishable basis to rule otherwise.[9] In the present case, the Debtors are not seeking to "reclassify" Exeter's claim, not seeking to foist depreciated collateral values on Exeter, and not seeking to discharge the balance owed to Exeter. They are proposing to pay Exeter **the value of the claim determined at confirmation**, albeit without additional post-surrender interest.[10] Under *Nolan* and *Adkins*, the debtor is still permitted to surrender, but the claim must continue to be treated as secured (even without collateral). The Debtors are proposing to pay Exeter exactly what it bargained for at confirmation, less interest, and Exeter bears no greater risk than any other Chapter 13 creditor who no longer has collateral to protect its claim. The concerns of *Nolan* and *Adkins* are not present under the facts of this case.

---

[9] *See Coney Island Auto Parts Unlimited, Inc. v. Vista-Pro Auto., LLC*, No. 3:22-CV-00804, 2023 WL 5917401, at *2 (M.D. Tenn. Sept. 8, 2023) ("[L]ower courts in this circuit are bound by the approach mandated by the Sixth Circuit Court of Appeals – regardless of what commentators and other circuits may say."), *aff'd sub nom. In re Vista-Pro Auto., LLC*, 109 F.4th 438 (6th Cir. 2024), *cert. granted sub nom. Coney Island Auto Parts, Inc. v. Burton*, No. 24-808, 2025 WL 1603597 (U.S. June 6, 2025).

[10] The holdings of *Nolan* and *Adkins* did not address, nor were they concerned with, the payment of interest as a justification for preventing reclassification and/or bifurcation. Furthermore, there is nothing in the Code or the case law that requires the Debtors to pay Exeter interest after surrender of the collateral. The United States Supreme Court in *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004), set forth a detailed, lengthy analysis of four different approaches to determining the correct method to establish the applicable rate of interest when a Chapter 13 Plan proposes to **cram down** a secured claim for personal property under 11 U.S.C. § 1325(a)(5)(B). In *Till*, the Supreme Court is consistent and clear that its holding applies only in circumstances in which a Chapter 13 Plan proposes a cramdown on a secured claim, not surrender, as proposed here by the Debtors. The interest issue is not the focus of *Nolan* and *Adkins*, and the Court's holding today does not violate the reasoning, justification, or spirit of the Sixth Circuit's decisions. Under Sections 1325 and 1329, "debtors retain optionality to address 910 claims in one of four ways: (i) reach a consensual arrangement with the lender; (ii) cram the claim down through the plan at a *Till* rate of interest (and without bifurcation); (iii) surrender the vehicle; or (iv) in the case of a continuing claim, cure and maintain the loan." *In re Page*, 658 B.R. 178, 188 (Bankr. E.D. Wash. 2024); *see also In re McGuire*, 653 B.R. 558, 560–61 (Bankr. N.D. Ill. 2023) ("To confirm a chapter 13 plan, debtors must satisfy the requirements set forth in 11 U.S.C. § 1325. If a secured creditor does not accept the debtor's proposed plan (and the debtor does not surrender the property), the plan must provide that 'the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.' 11 U.S.C. § 1325(a)(5)(B)(ii).").

Lack of reclassification and paying Exeter the full value of its collateral as determined at confirmation is a meaningful distinction. *Nolan* was primarily concerned with debtors avoiding the full economic burden of secured debts by surrendering depreciated collateral and then shifting the loss to the creditor through reclassification. That policy concern does not arise when the debtor is paying the value of the claim as determined at confirmation, albeit without further interest.

The Debtors seek to continue to pay Exeter as a secured creditor, but to modify the "amount" of the payment because there is no further risk to Exeter's collateral. A modification to surrender collateral is expressly authorized in 11 U.S.C. § 1329(a)(1) and (3).[11] With respect to 11 U.S.C. § 1329(a)(1), courts generally consider each secured claim to be in a separate class by itself. *Keith M. Lundin & William H. Brown*, CHAPTER 13 BANKRUPTCY, 4TH ED., § 264.1 at ¶ 18, Sec. Rev. July 14, 2004, www.Ch13online.com ("[S]ecured claims are each unique and are each provided different treatments under Chapter 13 plans - different interest rates, different values of collateral, different monthly payments and so forth."). Therefore, a modification to surrender collateral that reduces the amount of payments to a secured creditor to correspond with the amount received from the collateral, without reducing the total amount of the secured claim at confirmation, falls within the language of 11 U.S.C. § 1329(a)(1). *See In re Cooke*, 655 B.R. 181, 190.

---

[11] 11 U.S.C. § 1329(a) provides in relevant part:

> At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
>
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
> (2) extend or reduce the time for such payments;
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

8
Case 3:23-bk-03205   Doc 67   Filed 06/24/25   Entered 06/24/25 12:49:07   Desc Main
Document      Page 8 of 11

Subsection (a)(3) specifically provides for the alteration of "the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan[.]" 11 U.S.C. § 1329(a)(3). As such, a modification seeking to surrender collateral is expressly authorized in 11 U.S.C. § 1329(a)(1) and (3), and nothing in *Nolan* nor *Adkins* holds to the contrary. *See In re Tucker*, 500 B.R. 457, 462 ("[A] debtor's surrender of collateral to a creditor is a form of payment made to that creditor outside of a plan."). "Modifying a plan to change the amount of payment to a secured creditor when it receives its collateral – or the insurance proceeds from its collateral – is permitted. This type of modification complies with § 1322(b)(8) and § 1325(a)(5), as required by § 1329(b)." *In re Cooke*, 655 B.R. 181, 188-89.[12]

The Court finds the Debtors' proposed modification is sufficiently distinguishable from *Nolan* and *Adkins*. The Debtors are not attempting to reclassify but are instead seeking only to modify the amount of the payment to take into account the surrender and sale of the collateral. At the same time, the Debtors are still paying the secured creditor the full value of its allowed claim as was set at confirmation, but without post-surrender interest. The Debtors' modification abides by *Nolan* and *Adkins*' prohibition on reclassification, alleviating, if not eliminating, the concerns raised in those cases about debtor abuse and unfairness regarding depreciation and risks. Nor does the Debtors' modification require any reconsideration of Exeter's claim because the claim is continuing to be paid as valued at confirmation with only a modification in the amount of the

---

[12] As pointed out by the Court in *In re Cooke*, "[s]ection 1329(a)(3) does not distinguish between secured and unsecured creditors when it allows this type of modification. The Bankruptcy Code defines a 'creditor' as an 'entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[.]' 11 U.S.C. § 101(10)(A). Congress could have chosen to limit this type of modification to unsecured creditors, just as it limited the power to seek modification to unsecured creditors, but it did not." *Id*. at 189.

payment needed to reflect the reality of liquidated collateral.[13] The modification proposed by the Debtors fits squarely within 11 U.S.C. § 1329 and within the boundaries of what is permissible in the Sixth Circuit under *Nolan* and *Adkins*.

Exeter raises one final argument regarding the language in the plan and confirmation order in section 9 of the non-standard provisions. The specific language relied on by Exeter provides:

> If relief from the automatic stay is ordered as to any item of collateral listed in sections 3.1, 3.2 or 3.3, all payments under those paragraphs on account of claims secured by that collateral will cease[sic]; the trustee shall restart payments pursuant to the terms of the confirmed plan if [Exeter] files an amended claim withing 120 days after the grant of relief from the automatic stay that reflects the application of any proceeds derived from the collateral.

Exeter contends that the terms of the confirmed plan bind the Debtors, and no modification may occur with regard to Exeter's claim.

The Court disagrees. The clear statutory language of 11 U.S.C. § 1329 permits modification by the Debtors. *See Storey v. Pees* (*In re Storey*), 392 B.R. 266, 270 (B.A.P. 6th Cir. 2008) ("Despite the binding effect of a confirmed plan, 11 U.S.C. § 1329 provides that a confirmed plan may be modified at the request of a debtor, the trustee, or the holder of an allowed secured claim.… By its own terms, 11 U.S.C. § 1329 sets forth no standard as to when post-confirmation modification is permitted.").[14] The Court does not find any inconsistency between the language referencing Exeter

---

[13] This Court reads *Adkins* as a clarification—and limitation—of *Nolan*. Under *Adkins*, surrender is permissible so long as the plan complies with 11 U.S.C. § 1325(a)(5), which includes the alternative of surrendering collateral in satisfaction of the secured claim. The statute does not mandate interest in such a scenario. Where the debtor surrenders the collateral and proposes to pay the claim in full without interest, the plan satisfies the Code if the creditor is receiving at least the allowed amount of its secured claim.

[14] *See also Ford Motor Credit Co. v. Parmenter* (*In re Parmenter*), 527 F.3d 606, 609 (6th Cir. 2008) ("A bankruptcy court, it is no doubt true, may modify a plan in some circumstances.…"); *Zvoch v. Winnecour* (*In re Zvoch*), 618 B.R. 734, 739 (Bankr. W.D. Pa. 2020) ("While it is certainly true that confirmation binds both the debtor and creditors to the terms of the plan, the terms of the plan may be revisited at any time before the completion of payments."); *In re Bennett*, No. 18-52250, 2021 WL 5917971, at *2 (Bankr. E.D. Ky. Dec. 14, 2021) (citations omitted) (noting that bankruptcy courts may only permit modifications that strictly fall within the parameters of § 1329).

in the Confirmation Order and the Debtors' proposed modification. In fact, it is as if the parties anticipated this exact scenario and protected payments to Exeter in the event of a sale or loss of its collateral.

### III. CONCLUSION

After the surrender and sale of the 2015 Ford Escape, and after Exeter files its amended claim (within 120 days of the order granting stay relief), Debtors propose to pay the allowed secured claim as stated in the confirmed plan, but with no additional interest. This proposal is distinguishable from *Nolan* and *Adkins*. Section 1329 authorizes this modification, and 11 U.S.C. § 1325(a)(5)(C) permits satisfaction of the secured claim through surrender without any statutory requirement for further interest.[15] Moreover, no provision in the Confirmation Order prevents the proposed modification.

Accordingly, the Court finds that the Debtors' motion to approve the modified plan should be **GRANTED** and the objections of Exeter **OVERRULED**.

An appropriate order will enter.

> **THIS MEMORANDUM OPINION WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE.**

---

[15] 11 U.S.C. § 1325(a)(5)(C) provides in relevant part:

> (a) Except as provided in subsection (b), the court shall confirm a plan if…
> (5) with respect to each allowed secured claim provided for by the plan…
> (C) the debtor surrenders the property securing such claim to such holder.